**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MAUCLIN MCGANN,** | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **V.** | § | |
| | § | |
| | § | |
| **AETNA Resources LLC,** | § | **(JURY TRIAL DEMANDED)** |
| **Defendant.** | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF THIS COURT:**

COMES NOW Mauclin McGann ("Plaintiff" or "Ms. McGann") filing this, her Original Complaint wherein she describes the unlawful employment practices Defendant AETNA Resources LLC ("Defendant" or "Aetna") subjected her to during her employment and in the termination of her employment based on her race, color, national origin, and/or protected activity. In support of her causes of action, Ms. McGann respectfully shows the Court as follows.

### I.      JURISDICTION, PARTIES, AND VENUE

1.      This Court has jurisdiction over the causes of action alleged by Plaintiff pursuant to 28 U.S.C. §1331 (federal question), 42 U.S.C. § 2000e-5(f)(3) (Title VII), and 42 U.S.C. §1981 ("Section 1981").

2.      Plaintiff, Mauclin O. McGann is Black (color), African-American (race) and was born in Jamaica, West Indies (national origin). At all times relevant to the facts and causes of action stated herein, Ms. McGann's employment was protected Title VII and 42 U.S.C. §1981. At all relevant times to the facts stated within this Complaint, Ms. McGann was Defendant's employee within the meaning of each of these statutes.

3.      Defendant AETNA Resources LLC ("Defendant" or "Aetna") is a corporation that operated in Texas during the relevant times set forth in this Complaint. Defendant was, at all times relevant to the facts and claims within this Complaint, Ms. McGann's private-sector employer within the meaning of Title VII and Section 1981.

4.      Plaintiff intends to serve Defendant with this Complaint by and through its registered agent: CT Corporation System, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201.

5.      The employment practices alleged to be unlawful within this Complaint were committed within the Southern District of Texas, Houston Division.  Venue is appropriate in this Court.

<u>VICARIOUS LIABILITY--RESPONDEAT SUPERIOR</u>

6.      Whenever in this pleading it is alleged that Defendant did any act or thing, or failed to do any act or thing, it is meant that Defendant's officers, owners, servants, employees, or representatives and management did such act or thing, or failed to do such act or thing, or that such act or thing or omission was done in the course and scope of that person's employment with Defendant, or in the furtherance of Defendant's interests, or with the full authorization, permission, tolerance, and/or ratification of Defendant, or was done by an authorized member of management of Defendant or was done in the normal routine of the accepted, tolerated, or permitted conduct, customs, and/or practices of Defendant's officers, owners, servants, employees, management and/or representatives.

7.      All conditions precedent to the filing of this lawsuit have occurred.

**II.      EXHAUSTION OF ADMINSTRATITIVE REMEDIES**

8.      Ms. McGann filed an original Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") on or about September

1, 2024 wherein she averred that Defendant engaged in discrimination against her because of her race (African-American), and color (Black), and in retaliation for her complaints of race discrimination during her employment. The EEOC assigned Ms. McGann's Charge the No. 460-2020-09140 and issued Ms. McGann a Right-to-Sue letter on January 31, 2025. She timely files her suit within 90 days of her receipt thereof.

### III.  FACTUAL BACKGROUND

9.      Ms. McGann is a highly experienced African-American woman of Jamaican descent who worked for Defendant for over 18 years. She began her employment with Defendant in March 2007 as a Private Fee for Service Manager, and she most recently worked as a Lead Director in Defendant's Medicare Service Operations.

10.      Throughout her tenure, Ms. McGann performed her job exceptionally. In 2019, 2020, 2021, and 2022 she received performance ratings of "Exceeds Expectations," accompanied by strong compensation reviews and leadership commendations.

11.      Within Ms. McGann's July 17th, 2023, Mid-Year Assessment, her supervisor stated that she reflects the values communicated in the CVS Compliance Commitment statement; she supports processes that are always in the best interest of the member while keeping in compliance with Medicare regulations; she encourages and leads an organization that is extremely transparent with any issue that may arise to ensure the quickest turnaround time for resolution and foster departmental environment to the same Heart at Work awards that her and her team received, which reflected her teams dedication to the values of Caring , Integrity, Accountability and Innovation.

12.      Despite this stellar record, Ms. McGann was not considered for a promotion to Medicare Service Operation ED for which she applied in 2022. Instead, in 2023, Defendant promoted Robert Hill (White, Non-Hispanic male) into the position beginning in June 2023. Upon

information and belief, Robert Hill did not have previous Medicare-leader experience like Ms. McGann.

13.    When Robert Hill was awarded the Executive Director position, he became Ms. McGann's direct manager. Ms. McGann was the only Black Director who reported directly to Mr. Hill. From the inception, Mr. Hill subjected Ms. McGann to racially discriminatory and disparate treatment.

14.    Within the first month of his new role, on or about June 15, 2023, Mr. Hill assigned project manager, Hallie Newcombe (White), to attend Ms. McGann's weekly team huddles and observe her, a measure not imposed on Ms. McGann's White counterparts in her same position.

15.    Starting in August 2023, Mr. Hill required Ms. McGann (only) to work in-office three days per week, while her 215 other colleagues, including similarly situated White peers, were allowed to work fully remotely. As Ms. McGann was required to work in-office three days per week starting in August 2023, Mr. Hill's micromanagement extended to surveillance of her daily schedule and communications.

16.    Further, upon Mr. Hill's direction, Ms. McGann's team was reduced from 518 full-time employees (FTE) to 215 FTE. All of her Houston Direct reports who resided in Houston, TX—which consisted of two managers, five exempt leaders and approximately 70 non-exempt employees—were transferred to report to Robert Hill in Virginia and Cat Palm in Pennsylvania as full-time work-at-home employees while Ms. McGann was forced to work in Defendant's Houston office with no staff. The only staff in the building were Corporate Security and ABM Housekeeping staff.

17.    From the beginning of his role as ED and through Ms. McGann's eventual termination in early 2024, Mr. Hill made repeated offensive racial comments, including on the following specific date:

- On or about June 12, 2023, Mr. Hill stated to Ms. McGann, "You make me out to be a racist. I don't see color. As a matter of fact, I love Bob Marley," after she raised concerns about race-based treatment.

18.    On or about June 21, 2023, Ms. McGann raised a complaint about racial bias and treatment directly to Mr. Hill and Executive Director Palm in response to ED Palm referring to employees as "lowbrow." Ms. McGann was shocked and offended by leadership's statement and explained to both ED Palm and Mr. Hill that such a statement was an example of scientific racism. Mr. Hill dismissed Ms. McGann's complaint as nonsensical and pressured her to apologize for asserting race-based concerns. Mr. Hill then labeled Ms. McGann as "angry," "aggressive," and "insubordinate."

19.    On that same date, after Ms. McGann pointed out the racial implications of being described as "lowbrow," Mr. Hill responded, "I am tired of this woke shit." Mr. Hill also told Ms. McGann, "I love Jamaica. I look for Reggae concerts." to support his claim that he couldn't be racist.

20.    Besides these racist statements and microaggressions, during Mr. Hill's reign, Ms. McGann was micromanaged, surveilled, and undermined in meetings throughout 2023 and into 2024. She was also heavily and unnecessarily scrutinized.

21.    On September 18, 2023, for example, Mr. Hill initiated a PIAP Level II discipline against Ms. McGann allegedly because of an accidental posting by Ms. McGann during a meeting about which Ms. McGann apologized and took immediate accountability. By subjecting Ms. McGann to a Level II discipline for her error, Mr. Hill unreasonably skipped the Level 1 Warning

for an 18+ employee with a history of stellar performance. This treatment and severe discipline were in retaliation for Ms McGann's complaint of race discrimination about the high-brow comment.

22.    As part of the Level II Performance Improvement Action Plan, Ms. McGann was required to engage in weekly check-ins and remedial trainings such as "Getting Email Right"— courses. Ms. McGann, who holds an MBA from Nova Southeastern University, reasonably found Mr. Hill's punishment and directions demeaning given her decade of leadership.

23.    On January 9–11, 2024, Mr. Hill scrutinized Ms. McGann's offsite planning emails and used them as grounds to claim that she failed to follow the proper protocol.

24.    Mr. Hill further claimed Ms. McGann violated policies by emailing administrative staff on January 22, 2024, even though this had never been an issue in her 18 years of service.

25.    On or about January 30, 2024, Ms. McGann was also admonished for emailing executive administrative staff, a routine practice she had followed for more than 10 years.

26.    On or about February 15, 2024, Ms. McGann was issued a Level III PIAP without warning or discussion, based on fabricated or exaggerated claims. For one example, she was accused of arranging an offsite without approval, despite having an email thread dated January 9–10, 2024, showing she requested and received permission.

27.    On that same day, Ms. McGann filed a complaint with Human Resources concerning the ongoing verbal abuse, hostile work environment, and retaliation she had been subjected to and which had been created by Mr. Hill.

28.    Further retaliation continued. Throughout March 2024, Ms. McGann was excluded from strategic team meetings and planning discussions despite leading a 215-person team. Mr. Hill

further restricted her ability to communicate with her peers and administrative support, intensifying her isolation.

29.     In March 2024, Mr. Hill threatened Ms. McGann with disciplinary action over a same-day PTO request despite her status as an exempt employee with no prior attendance concerns.

30.     On or about March 15, 2024, Mr. Hill repeated the Bob Marley comment.

31.     On or about March 22, 2024, Mr. Hill told Ms. McGann, "I am getting an attorney to protect myself and my family from you," framing her as a threat in retaliation for her complaints concerning his treatment.

32.     As a testament to Ms. McGann's continued stellar performance, however, Ms. McGann's 2023 overall performance evaluation, dated March 25, 2024 (under Mr. Hill), rated her as having "Met All Expectations," and described her contributions as reliable and valuable.

33.     Additionally, on April 2, 2024, Michelle Peluso, AETNA Compliance Vice President/Chief Customer Service Officer who, upon information and belief, reported to then-CVS[1] President Karen Lynch, telephoned Ms. McGann and left her a voicemail full of accolades for her performance and contributions to Defendant. In her voicemail, Ms. Peluso stated that she reaches out to employees who are doing amazing things, that she has heard about the incredible work Ms. McGann does and that Ms. McGann always exemplifies hard-at-work behaviors. Ms. Peluso ended her voice message to Ms. McGann by remarking that "[Ms. McGann] does incredible work; is a champion for excellence, serving everyone and serving with heart."

34.     On April 8, 2024 HR informed Ms. McGann that they were closing her February 15th complaint concerning Mr. Hill. Notably, prior to this notification, Ms. McGann had provided

---

[1] CVS Pharmacy is Defendant's Parent Company.

HR with witnesses to contact who witnessed the abuse and hostile work environment about which she complained. HR, however, failed to contact any of the witnesses Ms. McGann provided.

35.    On April 12, 2024, Ms. McGann was abruptly terminated. Defendant claimed the termination was due to "unprofessional behavior," "insubordination," and a "failure to improve." However, contemporaneous emails and performance documentation directly contradict these reasons.

36.    In complete contrast, Ms. McGann's 2023 Year-End Performance Review, dated March 25, 2024—just two weeks before her termination—rated her as having "Met All Expectations," and included positive language about her dependability and team contributions. What is more, Ms. McGann's 2023 Review contained no remarks about unprofessional behavior, insubordination and/or a failure to improve by Ms. McGann. Too, the "Development Discussion" section of her Review was left blank.

37.    Additionally, emails from January 9–11, 2024 show that Ms. McGann followed protocol in planning an offsite event, undermining the rationale that she was insubordinate.

38.    Emails from July 17, 2023, January 30 and February 22, 2024, and a voice message of April 2, 2024, further show Ms. McGann's continued adherence to company norms and polite, professional communication. These contemporaneous records demonstrate a pattern of performance consistent with expectations, not warranting termination. In other words, Defendant's claimed reasons for Ms. McGann's termination due to "unprofessional behavior," "insubordination," and a "failure to improve" was pretextual and retaliatory.

39.    Further, within a June 2024 written exit interview-request by long-term Project Manager Dona Greenwell (who was then retiring) to AVP Christine Ellison, Ms. Greenwell acknowledged and voiced concerns regarding Mr. Hill's treatment of Ms, characterizing the

termination decision as questionable and inconsistent with internal practices. Ms. Greenwell's statement further supports the inference that Defendant's reasons for termination were retaliatory and unsupported by objective performance concerns.

40.     Upon information and belief, Defendant replaced Ms. McGann with a less experienced individual and only hired a Black individual to replace her after she filed a charge of discrimination with the Equal Employment Opportunity Commission in September 2024.

## IV.     CAUSES OF ACTION

### A.     <u>Race Discrimination pursuant to Title VII and 42 U.S.C. §1981</u>

41.     Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporates the same herein as though fully set forth.

42.     Defendant, through its agents, supervisors, or employees violated Plaintiff's civil rights in violation of Title VII and 42 U.S.C. §1981 by intentionally interfering with Plaintiff's employment because of her color (Black), race (African-American), and/or national origin (Jamaican).

43.     Defendant's violations include but are not limited to, subjecting Black, African-American, and/or Jamaican employes like Ms. McGann to disparate treatment in work assignment, discipline, responsibility, resources, prestige, scrutiny, convenience, and collaboration.

44. Defendant subjected Plaintiff to disparate treatment by subjecting her to different terms and more harsh terms of employment than her White counterparts. This included removing employees from under Plaintiff's team (job prestige) and forcing Plaintiff to work in the office 3 days per week. By July 6th, 2023, Hill had also decreased Plaintiff's downline by 223 FTE and 3 Managers and moved them to Plaintiff's White counterparts Claire Hack and Dale Vogel.

45.     Defendant subjected Ms. McGann to disparate treatment because of her color, race,

and/or national origin. This intentional interference consisted of discrimination of a continuous nature.

46.    Defendant, through its agents, supervisors, or employees further discriminated against Plaintiff based on her color and race, by subjecting her to a hostile work environment from June 2023 through her termination date through severe and pervasive statements and treatment related to and because of her race, color, and/or national origin, which substantially interfered with the terms and conditions of her employment.

47.    Defendant's discrimination against Plaintiff led to the loss and impairment in whole or part, of the wages, benefits, promotions, privileges, and terms and conditions of her employment.

48.    The above-described acts on Defendant's part were malicious, reckless, and intentional and consisted of discrimination of a continuous nature. The above-described acts on Defendant's part caused Plaintiff substantial injury and damage.

**B.    <u>Retaliation in Violation of Title VII and 42 U.S.C. §1981</u>**

49.    Ms. McGann repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporates the same herein as though fully set forth here.

50.    As herein alleged, on or about June 21, 2023, Ms. McGann reported her race discrimination concerns to Defendant. Immediately thereafter, Defendant began its illegal retaliation against Ms. McGann

51.    That is, after her discrimination complaint, Ms. McGann suffered adverse actions in the form of unwarranted discipline, stripped duties and responsibility, exclusion, high scrutiny, harassing and demeaning statements about her country of origin, harsh treatment, maltreatment, and ultimately termination.

52.    Defendant had no legitimate business reasons for any of its acts of discrimination or retaliation. Each act of discrimination and retaliation is in violation of Title VII and 42 U.S.C. §1981 and their anti-retaliation provisions.

53.    As a direct and proximate result of Defendant's willful, knowing, reckless, and intentional discrimination and retaliation against her, Ms. McGann has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Ms. McGann is thereby entitled to general, compensatory, and punitive damages in amounts that will be proven at trial. The above-described acts on Defendant's part were undertaken in violation of Title VII and 42 U.S.C. §1981and proximately caused Ms. McGann substantial damages.

## V.    DAMAGES

54.    Because of Defendant's discrimination, retaliation and interference, Plaintiff has suffered, suffers, and will continue to suffer economic losses including past and future lost wages and benefits as well as humiliation, mental anxiety and stress, and other damages. Accordingly, Plaintiff seeks all general, special, incidental, liquidated and consequential damages all of which amounts will be proved at trial.

55.    Additionally, because of Defendant's unlawful and discriminatory conduct, it has been necessary for Plaintiff to retain the undersigned attorney to represent her in the causes of actions set forth herein. Further, Plaintiff has agreed to pay her attorney reasonable fees for the preparation and trial of these causes.

56.    As a further consequence of Defendant's unlawful and discriminatory conduct, Plaintiff has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve her ability to earn a living. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages as shall be proven at trial.

57.     Plaintiff also seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant. Plaintiff also seeks post-judgment interest at the maximum rate allowed by law in the event that Defendant does not promptly tender damages assessed against it and avoid unjustly enriching Defendant.

## VI.     JURY DEMAND

58.     Plaintiff requests a trial by jury in this matter.

## VII.     PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be required to appear and answer her Complaint, and that on final trial, Plaintiff be awarded judgment against Defendant for:

a.   Permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant from engaging in any employment practice which discriminates on the basis of color, race, and/or national origin;

b.   All liquidated and unliquidated damages to which Plaintiff proves she is entitled pursuant to this Complaint and the causes of action set forth herein, and/or any amendments thereto with interest;

c.   Actual damages within the jurisdictional limits of the Court;

d.   Exemplary and/or punitive damages as allowed by law.

e.   Reasonable and necessary attorney's fees, as allowed by law;

f.   Pre and post-judgment interest, as allowed by law.

g.   Costs; and

h.   Any and all other relief to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ *Marjorie A. Murphy*
Marjorie A. Murphy
State Bar No. 24013218
Federal Bar No. 34512
The Murphy Law Practice, PLLC
24 Greenway Plaza, Ste. 1800
Houston, Texas 77046
Telephone: (832) 564-3804
Facsimile: (832) 553-7441
Email:marjorie@themurphylawpractice.com
**ATTORNEY-IN-CHARGE FOR PLAINTIFF,
MAUCLIN MCGANN**

## CERTIFICATE OF SERVICE

I hereby certify that on this April 30, 2025 this instrument was filed pursuant to the electronic filing guidelines set forth by the United States District Court for the Southern District of Texas, Houston Division and that service will be further made in compliance with the Federal Rules of Civil Procedure.

/s/  *Marjorie A. Murphy*
Marjorie A. Murphy